FILED
2009 Mar-30 PM 02:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

DELORIS MILLER,

    Plaintiff,

vs.                    CASE NO. CV-08-J-1034-NE

LAWRENCE COUNTY
ALABAMA,

    Defendant.

## MEMORANDUM OPINION

Pending before the court is defendant's motion for summary judgment (doc. 18), evidence in support of said motion (doc. 20), and memorandum in support of its motion (doc. 19). The plaintiff did not respond to said motion.[1]

Having considered all the pleadings and submissions, the court concludes that defendant's motion for summary judgment is due to be granted as no genuine issues of material fact remain, and defendant is entitled to a judgment in its favor as a matter of law.

---

[1] Pursuant to Exhibit A of the Scheduling Order entered by the court on September 24, 2008, the plaintiff had fourteen (14) days to respond to the motion for summary judgment from the date said motion was filed. Defendant's motion was filed on March 2, 2009. The plaintiff's response was therefore due on or before March 16, 2009. To date, no response has been received.

## I. Procedural History

The plaintiff commenced this action by filing a complaint (doc. 1) alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and the Civil Rights Act of 1871, 42 U.S.C. § 1983, against Lawrence County, Alabama (the "County"), Sheila Bishop, the Director of the Lawrence County Commission on Aging, in both her individual and official capacities, and Linda Harville, the former County Administrator, in both her individual and official capacities.[2] The County and Sheila Bishop filed a Partial Motion to Dismiss (docs. 8, 9) all claims against Bishop in both her individual and official capacities and any claims that may have been asserted under 42 U.S.C. §§ 1981a and 1983. The motion also requested the court strike the plaintiff's claim for punitive damages. This court granted the defendant's motion on July 29, 2008 (doc. 14), leaving the plaintiff's Title VII claim against the County as the only remaining claim.

## II. Factual Background

The plaintiff was hired as the site manager of the North Courtland nutrition center in November 1998. Plaintiff depo. at 27-28, Exhibit B to Defendant's

---

[2] This court granted the defendant's Motion to Quash Service of Process on Defendant Linda Harville in an Order dated July 29, 2008 (doc. 12), finding that such motion was due to be granted since Ms. Harville was not properly served by the plaintiff.

Summary Judgment. The North Courtland nutrition center is one of six senior nutrition centers in Lawrence County, and it is operated by the Lawrence County Commission through the Lawrence County Commission on Aging. Bishop Decl. ¶ 4, Exhibit A to Defendant's Summary Judgment. Each center has a site manager, whose responsibilities include: administering the center's daily operations; keeping appropriate records of funds received and spent; conducting fund raising; ensuring nutritious meals are prepared and served; and ensuring that the center is kept clean and maintained in good condition. Bishop Decl. ¶ 7, Exhibit A to Defendant's Summary Judgment. The plaintiff received a Lawrence County Personnel Handbook on January 25, 1999, as well as on-the-job training throughout her employment that focused on her duties such as handling funds and formal training through Auburn University's Center for Governmental Services. Plaintiff's depo. at 51, 54, Exhibit B to Defendant's Summary Judgment; Bishop Decl. ¶ 12, Exhibit A to Defendant's Summary Judgment.

The plaintiff's direct supervisor was Sheila Bishop, Director of Lawrence County Commission on Aging. Bishop Decl. ¶¶ 2-3, Exhibit A to Defendant's Summary Judgment; Position Description for Nutrition Center Manager, Exhibit C to Defendant's Summary Judgment. In early 2007 Bishop sent a memo to all nutrition site managers informing them that a yearly audit would commence in

February 2007. Plaintiff's depo. at 34, Exhibit B to Defendant's Summary Judgment; Bishop Memo, Exhibit E to Defendant's Summary Judgment. The memo stated that the site manager would be required to provide bank statements, deposit slips, and expenditure transactions from February 1, 2006, through February 1, 2007. Bishop Memo, Exhibit E to Defendant's Summary Judgment. Bishop became suspicious of the plaintiff's handling of the North Courtland center's funds prior to the audit. Bishop Decl. ¶¶ 14-15, Exhibit A to Defendant's Summary Judgment.

Examples of the plaintiff's questionable financial transactions stem from payments she made to her husband, Isaac Miller, checks from the County Commission that she only partially deposited for the benefit of the North Courtland center, overdraft fees, and checks she wrote to herself. The plaintiff states that she made regular payments to Isaac Miller from North Courtland center funds. Plaintiff's depo. at 64, Exhibit B to Defendant's Summary Judgment. The plaintiff testified that the payments were not made directly to Isaac Miller because Isaac Miller would pay those funds he received to helpers he would hire to do various chores and jobs at the North Courtland center. *Id.* From January 1, 2004, through October 16, 2006, the plaintiff wrote 237 checks totaling $4,536.00 to Isaac Miller. Bishop Decl. ¶ 19, Exhibit A to Defendant's Summary Judgment; Bank Records, Exhibit A to Defendant's Summary Judgment. From October 29, 2006, through January 9, 2007,

the plaintiff wrote 72 checks totaling $1,825.00 to Isaac Miller. *Id.* The plaintiff alleges that she had to hire outside workers because the County did not provide her with the adequate help that they provided to other centers with white employees. Plaintiff's depo. at 113-14, Exhibit B to Defendant's Summary Judgment. The plaintiff stated that Ronnie Simms, a County employee at the Caddo center, acted as the plaintiff did by paying outside workers to help with jobs at his center, but he was not terminated as a result. *Id.* at 120, 122.

The plaintiff also made a partial deposit of funds received from the County Commission. The plaintiff received a $600 check from the County Commission dated January 10, 2007, and another $600 check from the County Commission dated January 22, 2007. Bishop Decl. ¶ 18, Exhibit A to Defendant's Summary Judgment; Plaintiff's depo. at 87-88, Exhibit B to Defendant's Summary Judgment; Bank Records, Part 5 of Exhibit A to Defendant's Summary Judgment. Instead of depositing the entire amounts, the plaintiff withdrew in cash $469.29 and $118.00, respectively. *Id.* The plaintiff claims that she used the withdrawn cash to make utility payments for the North Courtland center. Plaintiff's depo. at 87, Exhibit B to Defendant's Summary Judgment. Bank records also reveal that the North Courtland center's account was frequently overdrawn. Bishop Decl. ¶ 21, Exhibit A to Defendant's Summary Judgment; Bank Records, Part 5 of Exhibit A to Defendant's

Summary Judgment. This resulted in $1,575.00 in overdraft fees in 2006, and from January 1, 2007, until January 14, 2007, $325.00 in return item fees and $25.00 in overdraft fees. *Id.* From January 2, 2007, until her termination, the plaintiff wrote five checks totaling $90.00 to cash or to herself. Bishop Decl. ¶ 20, Exhibit A to Defendant's Summary Judgment; Bank Records, Part 5 of Exhibit A to Defendant's Summary Judgment.

On February 13, 2007, Sheila Bishop met with the plaintiff regarding her management of funds and gave her an incident report. Plaintiff's depo. at 85, Exhibit B to Defendant's Summary Judgment. She was then placed on administrative leave without pay pending an investigation into her misuse of public funds. Bishop Decl. ¶ 22, Exhibit A to Defendant's Summary Judgment. The plaintiff did not attend her disciplinary hearing held on February 27, 2007, because she was seeking legal counsel. Plaintiff's depo. at 92-93, Exhibit B to Defendant's Summary Judgment. The plaintiff was terminated on March 2, 2007, due to her misuse of public funds. Bishop Decl. ¶ 22, Exhibit A to Defendant's Summary Judgment. The plaintiff was denied unemployment benefits, with the denial providing that the plaintiff was discharged for misuse of company funds and such action "constitutes a dishonest act committed in connection with her work." Denial of Unemployment Benefits, Exhibit F to Defendant's Summary Judgment.

### III. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; Fed.

R. Civ. Pro. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro. 56(e); *Matsushita*, 475 U.S. at 587. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991). However, the court should not make credibility determinations, nor weigh the parties' evidence. *See Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000).

## IV. Legal Analysis

The plaintiff brings a claim for racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, based on the above set of facts.  The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000).  Although the plaintiff has failed to file a response to the defendant's motion for summary judgment, no procedural tool for a default summary judgment exists under Fed. R. Civ. Pro. 56(e).  The court must still find that summary judgment is appropriate from the pleadings and the evidence.  However, "the language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.  With these standards in mind, the court considers the plaintiff's claim properly before it.

A plaintiff may prevail on an employment discrimination claim by either proving that intentional discrimination motivated the employer or producing sufficient evidence to allow a rational trier of fact to disbelieve the legitimate reason

9

proffered by the employer, which permits, but does not compel, the trier of fact to find illegal discrimination. *Wilson v. B/E Aerospace, Inc,.* 376 F.3d 1079, 1088 (11th Cir. 2004), citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48, 120 S.Ct. 2097, 2108-09, 147 L.Ed.2d 105 (2000).

Plaintiff asserts that the above facts constitute race discrimination in regard to her March 2007 termination. Because there is no direct evidence of discrimination, the court applies the analysis required for circumstantial evidence. This court must apply the three prong test fashioned by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973). *See also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981). First, the plaintiff must establish a *prima facie* case of discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). Assuming the employee meets this burden, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Bd. of Educ.,* 99 F.3d 1078, 1083 (11th Cir.1996). The defendant can feasibly present such strong evidence of a nondiscriminatory rationale that

summary judgment is warranted. *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir.1991), *cert. denied*, 502 U.S. 1058 (1992) (citing *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 596 (11th Cir. 1987).

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 and n. 10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. The focus of the case after the defendant meets its burden of production is on the defendant's subjective intent and the motivation behind the defendant's adverse employment action directed at plaintiff. *Harris*, 99 F.3d at 1083.

The plaintiff meets her prima facie burden of proof by establishing that (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably; and (4) she was qualified to do the job. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). The court has carefully read the evidentiary submissions. For purposes of the pending motion only, the court assumes that the plaintiff meets the elements of her *prima facie* case. The plaintiff, an African

11

American, is a member of a protected class, and she was terminated from her job on March 2, 2007. Bishop Decl. ¶ 22, Exhibit A to Defendant's Summary Judgment. The plaintiff also alleged that Ronnie Simms, a County employee at the Caddo center, acted as the plaintiff did by paying outside workers to help with jobs at his center, but he was not terminated as a result. Plaintiff's depo. at 120, 122, Exhibit B to Defendant's Summary Judgment. Lastly, the plaintiff was qualified to perform the job of site manager based on her history of employment with the North Courtland center and her job training. Bishop Decl. ¶ 12, Exhibit A to Defendant's Summary Judgment. Therefore, the defendant must show a legitimate, nondiscriminatory reason for the plaintiff's termination.

Having considered all of the evidence presented, the court finds that the defendant presented a legitimate, non-discriminatory reason for its actions. The plaintiff clearly misappropriated and misused company funds. The undisputed evidence is that the plaintiff wrote numerous checks to her husband, Isaac Miller, totaling $4,536.00 from January 1, 2004, through October 16, 2006, and $1,825.00 from October 29, 2006, through January 9, 2007.[3] Bishop Decl. ¶ 19, Exhibit A to

---

[3] The Lawrence County Personnel Handbook of 1998 has a policy against nepotism, stating that "[n]o individual will be employed by the county, if he would be subject to administrative or supervisory control by a member of his immediate family." Lawrence County Personnel Handbook Policy 1.2.1, Exhibit D to Defendant's Summary Judgment.

Defendant's Summary Judgment; Bank Records, Exhibit A to Defendant's Summary Judgment. The plaintiff withdrew in cash $469.29 and $118.00 from two $600.00 checks that she received from the County Commission in January 2007. Bishop Decl. ¶ 18, Exhibit A to Defendant's Summary Judgment; Plaintiff's depo. at 87-88, Exhibit B to Defendant's Summary Judgment; Bank Records, Part 5 of Exhibit A to Defendant's Summary Judgment. Other evidence of faulty management includes $1,575.00 in overdraft fees in 2006, and from January 1, 2007, until January 14, 2007, $325.00 in return item fees and $25.00 in overdraft fees. Bishop Decl. ¶ 21, Exhibit A to Defendant's Summary Judgment; Bank Records, Part 5 of Exhibit A to Defendant's Summary Judgment. Lastly, from January 2, 2007, until her termination, the plaintiff wrote five checks totaling $90.00 to cash or to herself. Bishop Decl. ¶ 20, Exhibit A to Defendant's Summary Judgment; Bank Records, Part 5 of Exhibit A to Defendant's Summary Judgment. As a result of these actions, the plaintiff was terminated. Bishop Decl. ¶ 22, Exhibit A to Defendant's Summary Judgment.

The court's role is not to act as a super personnel department that second-guesses employers' business judgments. *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000). Because the defendant has set forth a legitimate, non-discriminatory reason for its actions, the plaintiff must come forward with some evidence that such reason was a mere pretext for discrimination. *Vessels v. Atlanta*

*Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005).  The plaintiff has failed to present any such argument or evidence.  The defendant has put forth substantial non-discriminatory reasons for its decision to terminate the plaintiff's employment, which the plaintiff has failed to show were pretextual.  The court is of the opinion that the plaintiff has failed to meet her burden of proof to show that a genuine issue of material fact regarding her Title VII claim remains for trial.

## V. Conclusion

The court having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issue of material fact on her claim sufficient to allow this case to proceed to trial, the court **ORDERS** that the defendant's motion for summary judgment is hereby **GRANTED**.  The plaintiff's claim is **DISMISSED WITH PREJUDICE**.  Each party is to bear its own costs.

**DONE** and **ORDERED** this the 30th day of March 2009.

*/s/ Inge Prytz Johnson*
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE